UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Application of ANNINGTON FUNDING
PLC, ANNINGTON LIMITED, ANNINGTON
PROPERTY LIMITED, and ANNINGTON HOMES
LIMITED, Petitioners, for an Order Pursuant to
28 U.S.C. § 1782 To Obtain Discovery.

26-MC-00061 (JGK) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE:**

On February 13, 2026, Annington Fund PLC, Annington Limited, Annington Property

Limited, and Annington Homes Limited (collectively, "Annington Parties" or "Petitioners") filed

an ex parte application for an expedited order pursuant to 28 U.S.C. § 1782 (*see* ECF 1,

Application at 1), authorizing Petitioners to obtain discovery for use in a civil claim pending in

England in which Petitioners are named as defendants (the "English Action") from Respondents

Houlihan Lokey, Inc. ("Houlihan Lokey"); Jeffrey Dorst (Houlihan Lokey and Dorst hereinafter

collectively referred to as the "Houlihan Respondents"); D.E. Shaw & Co., L.P. ("D.E. Shaw");

Sona Asset Management (US) LLC ("Sona"); Centerbridge Partners, L.P. ("Centerbridge") (D.E.

Shaw, Sona, and Centerbridge hereinafter collectively referred to as the "Noteholder

Respondents"); Goldman Sachs & Co.; BNP Paribas; and J.P. Morgan Chase & Co (Goldman

Sachs & Co.; BNP Paribas; and J.P. Morgan Chase & Co. hereinafter collectively referred to as

the "Custodian Respondents."). Having reviewed Petitioners' and Respondents' submissions,

for the reasons set forth below, I respectfully recommend that Petitioners' application to obtain

discovery for use in the English Action be **GRANTED**.[1] To the extent that any Respondent finds,

upon undertaking compliance with the subpoenas, that complying presents an undue burden,

that Respondent may seek judicial intervention if necessary after meeting and conferring with

Petitioners.

## I.

## BACKGROUND

### A.    Factual Background

Petitioners are investors in residential rental property in the United Kingdom. (*See* ECF

4, Pets.' Mem. in Support of Application ("Pets.' Mem.") at 1.) Petitioner Annington Funding plc

had issued certain debt instruments (the "Notes") with a par value of £3.35 billion and varying

maturity dates between 2025 and 2051. (*See* ECF 5, Declaration of David R. Thomas ("Thomas

---

[1]    "Until recently, the consensus view in this District was that rulings on § 1782 applications are not dispositive, and therefore that such an application could be disposed by order of the Magistrate Judge to whom it was referred . . . ." *In re Libyan Asset Recovery and Mgmt. Office*, No. 21-MC-0852 (JGK) (BCM), 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16, 2023) (quoting *In re Hulley Enter. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)). However, in *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon. Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023), a panel of the Second Circuit decided that it lacked jurisdiction to review the order issued by a Magistrate Judge denying an application under Section 1782 and remanded so that the order could be "treated as a report and recommendation." 2023 WL 3166357, at *1. While the Second Circuit did not explain its reasoning, the theory would be that the entire purpose of a Section 1782 petition is to seek discovery, so that any rulings concerning a petition are dispositive. I therefore make a report and recommendation on the Application rather than issuing an opinion and order. *See In re BM Brazil 1 Fundo de Investimento em Participacões Multistrategia*, No. 23-MC-0208 (JGLC) (GS), 2024 WL 555780, at *1 (recommending denial of a motion to vacate an order granting discovery under Section 1782 and partial denial of a motion to quash the subpoenas that had been issued) (S.D.N.Y. Jan. 18, 2024), *report and recommendation adopted*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024).

Unless indicated otherwise, this report and recommendation omits internal quotation marks, citations, and alterations from quoted text.

Decl.") ¶ 10.)[2] The notes were issued under a trust structure, with each trust being governed either by the June 2017 Trust Deed or the September 2021 Trust Deed (collectively, the "Trust Deed") and managed by a trustee (the "Trustee"), which, at the time of the issuance of the Notes, was BNY Mellon Corporate Trustee Services limited ("BNY Mellon"). (*See id*. ¶¶ 10, 23.) Additionally, Petitioners held a £400 million floating rate term loan, which was due to mature and become repayable in 2028 (the "Term Loan.") (*See id.* ¶ 11.)

At the time the Notes were issued and until 2024, Petitioners' largest asset was their interest the Married Quarters Estate (the "MQE"), which are rental units for UK military personnel. (*See* ECF 4, Pets.' Mem. at 2; ECF 5, Thomas Decl. ¶ 8). In December 2024, Petitioners announced a sale of their interests in the MQE to the UK government for £5.994 billion (the "MQE Sale"), which was completed in January 2025. (*See* ECF 5, Thomas Decl. ¶ 12.) Petitioners then used £969 million of its proceeds from the MQE sale to repay the Term Loan and some of the Notes. (*See id.* ¶ 13.) Petitioners then made a tender offer where noteholders could either sell to Petitioners their respective outstanding Notes (the "Tender Notes"), which totaled £2.27 billion, at a premium to their market value, or could remain as bondholders of Petitioners while Petitioners used the Notes to support new investment in the UK private residential market (the "Tender Offer"). (*See id*. ¶¶ 14-15.)

After Petitioners' Tender Offer was announced, different investment funds began to purchase Tender Notes in the market. (*See id*. ¶ 17.) Some of these noteholders formed an ad

---

[2]     Petitioners Annington Limited, Annington Property Limited, and Annington Homes Limited are guarantors of the Notes. (*See* ECF 5, Thomas Decl. ¶ 9.)

hoc group to challenge Petitioners' prices for the Tender Notes. (*See id*. ¶ 18.). This ad hoc group included the Noteholder Respondents and the Custodian Respondents, the Custodian Respondents being securities firms holding Notes on behalf of unidentified customers. (*See id.* ¶¶ 22, 24.)

Petitioners also allege that Houlihan Lokey, led by its Managing Director and Liability Management practice leader, Jeffrey Dorst, was the financial advisor of the ad hoc group until December 2024, when it withdrew from its role because of a conflict of interest. (*See id*. ¶¶ 19-21.) Petitioners further alleges that Houlihan Respondents advised the ad hoc group to leverage the terms of the Notes to obtain a par recovery and earn a short-term trading profit. (*See id*. ¶ 22.) However, Houlihan Respondents dispute this allegation and maintain that they never acted as financial advisor to the Noteholder Respondents. (*See* ECF 27, Declaration of Jeffrey Dorst ("Dorst Decl.") ¶ 6.)

Over the next few months, against Petitioners' wishes, the ad hoc group sought to have then-Trustee BNY Mellon declare that Petitioners' sale of its interest in the MQE was a "cessation of business" that constituted an event of default under the Trust Deed. (ECF 5, Thomas Decl. ¶ 23.) Such a declaration would accelerate the Notes and require Petitioners to repay the noteholders at par. (*See id*.) However, BNY Mellon declined to any such declaration, which led to the ad hoc group to try to replace BNY Mellon as Trustee. (*See id*. ¶ 25-49.)

On January 20, 2026, the ad hoc group succeeded in replacing BNY Mellon as Trustee with GLAS Trustees Limited ("GLAS" or "Replacement Trustee"). (*See id.* ¶ 50.) On January 27, 2026, GLAS issued a Notice of Acceleration with respect to the Tender Notes, declaring that Petitioners' MQE Sale had been a "cessation of business" default event. (*Id.* ¶ 52.) GLAS stated

4

that it independently concluded that the MQE Sale constituted a default event (*see id.* ¶ 53), but Petitioners allege that GLAS was "following instructions said to be given by the requisite majority of Noteholders." (ECF 4, Pets.' Mem. at 3.)

Also on January 27, 2026, GLAS filed the English Action in the High Court of Justice of England and Wales, King's Bench Division, Commercial Court, under Part 8 of the English Civil Procedure Rules 1998. GLAS alleges that Petitioners are in default in respect to the Tender Notes and "seeks to compel Petitioner[s] to accelerate payment of the outstanding Tender Notes and repay them immediately at par." (ECF 5, Thomas Decl. ¶¶ 54-55, 54; ECF 22, Declaration of Mona Vaswani ("Vaswani Decl.") ¶ 7.) Such payment, along with other monetary compensation, would total nearly $1 billion at the current exchange rate. (*See* ECF 5, Thomas Decl. ¶ 5.)

On March 6, 2026, GLAS formally served the English Action on Petitioners. (*See* ECF 30, Declaration of Rebecca Louise Burton ("Burton Decl.") ¶ 13.) On March 20, 2026, Petitioners filed their Acknowledgment of Service in the English Action, in which Petitioners stated that they (i) would contest the English Action, (ii) believed the English Action was not appropriate for Part 8, and (iii) reserved the right to bring counterclaims and/or additional claims. (*See id*. ¶¶ 13, 24.)

Part 8 of the English Civil Procedure Rules 1998 is available for matters that do not involve substantial disputes of fact and as a result, there is no right of "disclosure," which Noteholder Respondents seem to use interchangeably with "discovery." (ECF 22, Vaswani Decl. ¶¶ 7-8; ECF 30, Burton Decl. ¶ 15.) Disclosure is an English litigation concept, available in proceedings under Part 7 of the English Civil Procedure Rules 1998, which involves parties

conducting searches in their respective document repositories for relevant documents and disclosing copies of those documents to the other parties. (*See* ECF 30, Burton Decl. ¶ 15). Parties to a proceeding in Part 8 may apply to transfer their case to Part 7, where disclosure is generally available to parties. (*See* ECF 22, Vaswani Decl. ¶¶ 10-12.)

While automatic disclosure is not available, Part 8 does accept witness statements with documents attached as exhibits, and there are no restrictions on the documents used as such exhibits. (*See* ECF 30, Burton Decl. ¶¶ 18-20.) A defendant in a Part 8 claim must file such written evidence within 28 days of filing its Acknowledgment of Service or apply to the court for leave to file additional evidence after the 28-day filing deadline. (*See id.* ¶ 17.) Further, after a party files its witness statements and exhibits, parties may apply for "disclosures" in a Part 8 Claim. (*See id.* ¶¶ 21-23.) Defendants in a Part 8 Claim may also apply to the court for leave to bring counterclaims; there are no restrictions on the type of evidence that can be used to support such applications. (*See id.* ¶ 24.)

**B.    Procedural History in this Court**

On February 13, 2026, Petitioners filed an ex parte Application and supporting papers, seeking discovery from Respondents on an expedited basis to use for their defenses and potential counterclaims in the English Action. (*See* ECF 1, Application; ECF 4, Pets.' Mem.; ECF 5, Thomas Decl.; ECF 6, Declaration of George W. Kroup ("Kroup Decl.").) On February 24, 2026, Your Honor issued an order directing Annington to serve its Application and accompanying papers on Respondents and set deadlines for Respondents and Petitioners to file oppositions and a reply, respectively, which deadlines Your Honor later extended. (*See* ECF 8, Order; ECF 19,

Order.) On March 6, 2026, this matter was referred to me for a report and recommendation on the Application. (*See* ECF 20, Order of Ref.)

On March 16, 2026, the Noteholder Respondents timely filed their opposition to the Application and supporting papers. (*See* ECF 22, Vaswani Decl.; ECF 28, Noteholder Resps.' Mem. of Law in Opp. to the Application ("Noteholders' Mem.").) The same day, Houlihan Respondents timely filed their opposition to the Application and supporting papers, incorporating the Noteholder Respondents' arguments while further elaborating on their contention that the discovery sought by Petitioners is unduly intrusive and burdensome. (*See* ECF 26, Houlihan Respondents' Mem. of Law in Opp. to the Application ("Houlihan's Mem."); ECF 27, Dorst Decl.) On March 20, 2026, Petitioners timely filed its reply and supporting declaration in further support of its Application. (*See* ECF 29, Petitioners' Mem. of Law in Further Support of Their Application ("Pets.' Repl. Mem."); ECF 30, Burton Decl.) No Custodian Respondents filed an opposition to the Application.

**C.       The Application**

The Application seeks:

- From Houlihan Lokey and Mr. Dorst, documents from and corporate representative deposition testimony covering the period of July 1, 2024 to present, regarding Houlihan Respondents' advice to the ad hoc group regarding purchasing the Notes and the basis for challenging the pricing of the Tender Offer (*see* ECF 4, Pets.' Mem. at 5-6; ECF 5-1, Proposed Houlihan Lokey Subpoena; ECF 6-2, Proposed Dorst Subpoena);

- From the Noteholder Respondents, documents from and corporate representative testimony covering the period of August 1, 2024 to present, regarding the Noteholder Respondents' knowledge and understanding of the MQE Sale and Petitioners' plans and strategies regarding the Tender Offer; the replacement of BNY Mellon with GLAS as Trustee; and Noteholder Respondents' alleged role in GLAS's issuance of the Notice of Acceleration (*see* ECF 4, Pets.' Mem. at 6; ECF 6-3, Proposed D.E. Shaw Subpoena; ECF 6-4, Proposed Sona Subpoena; ECF 6-5, Proposed Centerbridge Subpoena); and

- From Custodian Respondents, documents from the period of August 1, 2024 to present, identifying other noteholders who participated in the ad hoc group and the group's alleged instruction to GLAS to issue the Notice of Acceleration (*see* ECF 4, Pets.' Mem. at 7; ECF 6-6, Proposed Goldman Sachs & Co. Subpoena; ECF 6-7 Proposed BNP Paribas Subpoena; ECF 6-8, Proposed J.P. Morgan Chase & Co. Subpoena).

## II.

## **DISCUSSION**

### A.    **Legal Standard**

Under 28 U.S.C. § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." 28 U.S.C. § 1782(a). Under the statute, the party making the application must show that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

When the statutory requirements are met, the court is "free to grant discovery in its discretion." *In re Optimal Invs. Servs., S.A.,* 773 F.3d 456, 460 (2d Cir. 2014). Although that discretion is broad, it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

The Supreme Court has identified four discretionary factors (the "*Intel* Factors") that a court considers when ruling on a Section 1782 application: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Id*. at 97-98 (citing *Mees*, 793 F.3d at 298 and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

The fourth *Intel* Factor – whether the request is "unduly intrusive or burdensome" – is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *In re XPO Logistics, Inc.*, No. 15-MC-0205 (LGS), 2017 WL 6343689, at *4-5 (S.D.N.Y. Dec. 11, 2017) (citing *Mees*, 793 F.3d at 302 and *Intel*, 542 U.S. at 264-65). As applied to Section 1782 applications, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon. Corp.*, No. 22-MC-0132 (RA) (KHP) ("*Correios*"), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), *remanded on other grounds*, 2023 WL 3166357 (2d Cir. Mar. 28, 2023). The "proportionality analysis depends upon the relevance of the information sought – and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).

9

**B.     Analysis**

1.   The Statutory Requirements Are Met.

Petitioners argue that it has met the statutory requirements under 28 U.S.C. § 1782(a).

(*See* ECF 4, Pets.' Mem. at 8-12.) It states that (i) each of the Respondents resides in this

District, because each is either headquartered in New York or has an office in New York where

the primary actors involved in the events surrounding Petitioners' Application are based; (ii) the

requested discovery is for use in the English Action, and (iii) Petitioners, as both defendants and

potential counterclaimants, are interested persons in the English Action. (*See id*.)

Respondents do not challenge, and have therefore conceded, that Petitioners have met

the statutory requirements of Section 1782. *See In re Catalyst Managerial Services, DMCC*, 680

F. App'x at 41 n.2 (noting that the intervenor seeking denial of a petitioner's 1782 application

conceded a point made by the petitioner in its opposition brief regarding the third *Intel* Factor

"by not rebutting [the petitioner's] presentation of [the] argument about the third *Intel* factor

in its reply brief"); *In re Children's Investment Fund Foundation (UK)*, 363 F. Supp. 3d 361, 371

(S.D.N.Y. 2019) ("[A]rguments not addressed in an opposition brief are conceded."). Therefore, I

conclude that Petitioners have satisfied the statutory requirements of Section 1782.

2.   *Intel* Discretionary Factors

Petitioners argue that each of the four *Intel* Factors weighs in favor of granting the

discovery requested by the proposed subpoenas: (1) Respondents are not parties to the English

Action; (2) there is no indication that evidence from Respondents would not be accepted by the

English court; (3) the Application is not an attempt by Petitioners to circumvent any English rule

10

of court or any holding by the court in the English Action prohibiting discovery; and (4) the

Application is not unduly intrusive or burdensome. (*See* ECF 4, Pets.' Mem. at 12-16.)

The Noteholder Respondents and Houlihan Respondents counter that (1) granting

Petitioners' Application would be inconsistent with the discovery restrictions in Part 8

proceedings; (2) Petitioners' Application is an attempt to circumvent the proof-gathering

restrictions of Part 8 proceedings, and (3) the burden on Noteholder Respondents and Houlihan

Respondents in responding to the Application would be substantial. (*See* ECF 28, Noteholders'

Mem. at 4-12; ECF 26, Houlihan's Mem. at 1 ("Houlihan Lokey Respondents join in the

submission by . . . Noteholder Respondents . . . and incorporate those arguments in full herein,

including that granting Petitioners' Application would be an end-run around the English

Courts.").) Houlihan Respondents separately argue that granting the Application would be

specifically burdensome to them because they never provided advice to the ad hoc group, and

the discovery sought from Houlihan Respondents is irrelevant to the central claim of the English

Action (that is, whether there was an event of default under the Trust Deed). (*See* ECF 26,

Houlihan's Mem. at 2-3.)

      a.  The First *Intel* Factor.

The first *Intel* Factor examines whether "the person [or entity] from whom discovery is

sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid

generally is not as apparent." *Mangouras*, 980 F.3d at 97. None of the Respondents is a party to

the English Action between GLAS as Trustee and Petitioners. (*See* ECF 4, Pets.' Mem. at 4; ECF

5-30, Claim Form.). Respondents make no arguments as to why the first *Intel* Factor should

weigh against Petitioner. Accordingly, the first *Intel* Factor weighs in favor of granting the Application.

        b.   The Second *Intel* Factor

The second *Intel* Factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Mangouras*, 980 F.3d at 97-98. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance[,]" and a court "should deny discovery on the basis of lack of receptiveness only where it is provided with authoritative proof that the foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100-02 (2d Cir. 1995)); *see also In re Safra*, No 21-MC-0640 (GHW) (JLC), 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government"); *Schmitz v. Bernstein Leibhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir. 2004) (denying the petitioner's discovery request where the German Ministry of Justice and local German prosecutor asked the district court to do so).

Petitioners argue that Courts in this District have routinely found that English courts are receptive to discovery produced pursuant to an order under Section 1782. (*See* ECF 4, Pets.' Mem. at 13 (citing *In re Man Group Ltd.*, No. 24-MC-559 (JHR) (OTW), 2025 WL 294277, at *3 (S.D.N.Y. Jan. 24, 2025) for the proposition that "there is ample evidence that courts in the United Kingdom are receptive to this Court's assistance with discovery under Section 1782").)

Noteholder Respondents and Houlihan Respondents reply in turn that granting Petitioners' Application would nevertheless be inconsistent with the character of the English Action, which was brought under Part 8 of the English Rules of Civil Procedure, where there is no automatic disclosure. (*See* ECF 28, Noteholders' Mem. at 5.).

"Under Second Circuit precedent, it is [Respondents] that bear[ ] the burden of offering authoritative proof showing that the English Court would not be receptive to the Section 1782 discovery sought by [Petitioners]." *In re BM Brazil 1 Fundo de Investimento em Participacões Multistrategia,* No. 23-MC-0208 (JGLC) (GS), 2024 WL 555780, at *1 (recommending denial of a motion to vacate an order granting discovery under Section 1782 and partial denial of a motion to quash the subpoenas that had been issued) (S.D.N.Y. Jan. 18, 2024), *report and recommendation adopted*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024). Neither the Noteholder Respondents nor the Houlihan Respondents have offered any "authoritative proof" that, because the English Action is a Part 8 Proceeding, the English court "would reject evidence obtained with the aid of section 1782." *In re Atvos Agroindustrial Investimentos*, 481 F. Supp. 3d at 176 (quoting *Euromepa*, 51 F.3d at 1100).

Noteholder Respondents and Houlihan Respondents contend that granting Petitioners' Application "would be inconsistent with the character of the proceedings underway abroad" because of the restrictions on discovery in a Part 8 proceeding. (*See* ECF 28, Noteholders' Mem. at 4.) According to Noteholder Respondents and Houlihan Respondents, "in a Part 8 proceeding, there is no discovery as of right," and "[t]here is no right to discovery in England for purposes of learning facts to support a motion to transfer a Part 8 proceeding to a Part 7 proceeding," in which there is a procedure for discovery of documents. (*Id*. at 5.)

13

Petitioners counter that Noteholder Respondents and Houlihan Respondents' arguments "mischaracterize[ ] both the nature of the Part 8 procedure and the scope of discovery permitted under Section 1782." (ECF 29, Pets.' Repl. Mem. at 4.) First, Petitioners contend that Respondents' use of the word "discovery" interchangeably with the English concept of "disclosure" leads to an inaccurate description of the documentary evidence that cannot be sought and used in Part 8 proceedings;  Petitioners' English Counsel states that "Disclosure," which is not contemplated in Part 8 proceedings, "involves each party conducting certain searches of its own document repositories for relevant documents (or categories of documents) and disclosing copies of those to the other parties in the litigation." (ECF 30, Burton Decl. ¶ 15.) But the Application here is a request for discovery from nonparticipants in the English Action, so the documents Petitioners seek would seem to fall outside the scope of disclosure. (*See* ECF 30, Burton Decl. ¶ 15.)

Petitioners have also submitted evidence that documents may be submitted in Part 8 proceedings as exhibits to witness statements. (*See* ECF 4, Pets.' Mem. at 4; ECF 22-2, CPR Part 8 White Book; ECF 30, Burton Decl. ¶¶ 13, 18-20.) Petitioner's evidence states that for such exhibits, "English courts do not, in general, exercise any control over the manner in which a party obtains the evidence which he needs to support his case[,]" and "it is for that party to obtain and present the evidence which he needs by his own means, provided always that such means are lawful in the country in which they are used." (*See* ECF 30, Burton Decl. ¶¶ 27, 30 (quoting ECF 30-8, *South Carolina Insurance Co v Assurantie Maatshappij De Zeven Provincien NV* [1987] AC 24).)

I make no conclusions about the discoverability or admissibility of the evidence sought by Petitioners, as the Second Circuit has made clear that "a district court should not consider the discoverability of the evidence in the foreign proceeding, . . . [nor] the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). However, Noteholder Respondents and Houlihan Respondents have not provided any authoritative proof that the English Court would not be receptive to the 1782 discovery sought by Petitioners. *See In re Safra*, 2022 WL 3584541, at *5 ("[P]roof [of a foreign tribunal's receptivity to 1782 discovery] resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery.")

Accordingly, the second *Intel* Factor weighs in favor of granting the Application.

c.   The Third *Intel* Factor

The third *Intel* Factor asks "whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Mangouras*, 980 F.3d at 98, which occurs if the application is an attempt to evade discovery procedures in the foreign jurisdiction, or if the application is otherwise a "bad faith endeavor to misuse Section 1782." *In re Bouka*, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022); *see In re Hansainvest Hanseatische Inv.-GmbH,* 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third *Intel* Factor weighed in the applicant's favor because "the Court is not persuaded that Applicants have engaged in any improper or bad faith evasion of German procedures"). "[T]o demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not obtainable through [foreign] procedures, but that Applicants are engaged in

15

a bad faith endeavor to misuse Section 1782." *In re Hansainvest Hanseatische Investment*, 364 F. Supp. 3d at 251.

Noteholder Respondents and Houlihan Respondents contend that granting Petitioners' Application "would constitute a circumvention of the foreign proof-gathering restrictions in England" because of the restrictions on discovery in a Part 8 proceeding. (ECF 28, Noteholders' Mem. at 4.) But this argument is unpersuasive because, as explained above, Petitioners have presented evidence contradicting Noteholder Respondents and Houlihan Respondents' interpretation of discovery rules in Part 8 proceedings. *See supra* Part II.B.2.b; *see also Azima v. Handjani*, No. 21-MC-501 (PGG), 2022 WL 2788400, at *6-7 (S.D.N.Y. July 15, 2022) (holding that the petitioner's Section 1782 application was not an attempt to circumvent discovery restrictions in England where respondent could not support his claim that English courts did not allow for pre-trial depositions or that the petitioner was trying to avoid that alleged restriction). Moreover, neither Noteholder Respondents nor Houlihan Respondents make any arguments that Petitioners' discovery requests were made in bad faith. (*See generally* ECF 26, Houlihan's Mem.; ECF 28, Noteholders' Mem.)

Noteholder Respondents and Houlihan Respondents also assert that granting the Application prior to the English court's determination whether the Part 8 proceeding should be transferred to Part 7 would encroach on the English court's authority; they argue that by granting the Application, this Court would be bypassing the Part 8 discovery restrictions by "leapfrogging over the English court's right to decide whether discovery would be helpful or appropriate in this particular matter." (ECF 28, Noteholders' Mem. at 6-7.)

But requiring Petitioners to await the English court's decision on whether the English Action should be transferred from a Part 8 to a Part 7 proceeding is akin to a quasi-exhaustion requirement, which the Second Circuit has summarily rejected as a requirement to granting a 1782 application. *See Mees*, 793 F. 3d at 303-04 (vacating the district court's order denying the petitioner's 1782 application and explaining that "the district court should not condition discovery on an overt expression from the foreign court that it wants or needs the information"); *In re Metallgesellschaft AG*, 121 F. 3d 77, 79 (2d Cir. 1997) (holding that "a district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request" because "[s]uch a quasi-exhaustion requirement finds no support in the plain language of the statute"). Indeed, this Court previously rejected the argument that a petitioner should await the future decision of an English court regarding requested discovery materials before making a 1782 application, because this "would effectively impose an exhaustion requirement." *In re BM Brazil 1*, 2024 WL 555780, at *8; *see also In re Polygon Glob. Partners LLP*, No. 21-MC-0364 (ER), 2021 WL 2117397, at *10 (S.D.N.Y. May 25, 2021) (holding that petitioner did not attempt to circumvent foreign proof-gather restrictions through its 1782 application and explaining that "[w]hatever [the petitioner's] likelihood of success in seeking some or all of these materials in [the foreign jurisdiction] . . . *Intel* poses no administrative exhaustion requirement"); *In re Top Matrix Holdings Ltd.*, No. 18-MC-465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) (holding that petitioner's 1782 application was not an attempt to circumvent foreign restrictions and explaining that "Section 1782 does not require that the evidence requested be admissible"); *In re Aso*, No. 19-MC-190 (JGK) (JLC), 2019 WL 2345443, at *4 (S.D.N.Y. June 3, 2019) (granting the

17

petitioner's 1782 application and explaining that "Section 1782 contains no requirement that particular evidence be admissible in an ongoing foreign proceeding.")

As such, the third *Intel* Factor weighs in favor of granting the Application.

d.  The Fourth *Intel* Factor

The fourth *Intel* Factor looks at "whether the request is unduly intrusive or burdensome," *Mangouras*, 980 F.3d at 98, which is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics*, 2017 WL 6343689, at *4 (citing *Mees, 793 F.3d at 302*). In this context, Rule 26 provides that a "subpoenaed party must only produce documents that are in its possession, custody, or control," *In re Boustany*, 23-MC-0203 (LGS), 2024 WL 473569, at *2 (S.D.N.Y. Feb. 7, 2024)*, and "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Correios*, 2022 WL 4955312, at *8. The "proportionality analysis depends upon the relevance of the information sought"; in the case of a Section 1782 petition, "relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs.,* 680 F. App'x at 39. Further, "inconvenience alone is insufficient justification [to deny a 1782 application] that seeks potentially relevant testimony," and "general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *In re Novalpina Cap. Partners I GP S.À.R.L.*, 23-MC-00025 (PGG), 2025 WL 1160854, at *27 (S.D.N.Y. Apr. 21, 2025).

"The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case, and the burden then shifts to the party opposing discovery to show that the information sought

is privileged or unduly burdensome." *In re Application of Orthogen Int'l GmbH*, No. 24-MC-504 (VSB) (KHP), 2026 WL 311482, at \*2 (S.D.N.Y. Feb. 5, 2026). The opposing party establishes that compliance with the proposed subpoena would cause an undue burden by setting forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance." *In re Vale S.A.*, 20-MC-00199 (JGK) (OTW), 2021 WL 311236, at \* 3 (S.D.N.Y. Jan. 29, 2021); *see also In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (holding that the respondent failed to establish that the petitioner's proposed subpoenas created an undue burden where Respondent did not "present particularized evidence… that production of [the requested documents] would be unduly burdensome or costly.")

### i. The Parties' Positions

Petitioners state that the Application is not unduly intrusive or burdensome because the discovery requests are routine, limited in time to a fixed period beginning in 2024 and limited in scope to information relevant to Petitioners' defenses and potential counterclaims. (*See* ECF 4, Pets.' Mem. at 15-16.)

Noteholder Respondents and Houlihan Respondents counter that they would be substantially burdened by responding to the Application, which seeks all relevant documents over a two-year period and requires testimony from witnesses regarding events and issues not germane to the English Action; they argue that complying with the Application would cost millions of dollars in legal fees. (*See* ECF 26, Houlihan's Mem. at 2-3; ECF 28, Noteholders' Mem. at 10-11.) Noteholder Respondents and Houlihan Respondents also contend that compliance with the Application would be disproportionate to the needs of the English Action if the English court rules that disclosure is unnecessary. (*See* ECF 28, Noteholders' Mem. at 11-12.)

Noteholder Respondents separately take the position that the information Petitioners seek through testimony from the Noteholders' corporate representatives is held by deal teams based in England and that compelling the testimony of those deal team members here or educating a witness from this District would be inconvenient and burdensome. (*See* ECF 22, Vaswani Decl. ¶¶ 20-21; ECF 28, Noteholders' Mem. at 11.)

Petitioners respond that Noteholder Respondents and Houlihan Respondents mischaracterize the issues in the English Action and that its discovery requests are related to its defenses and potential counterclaims. (*See* ECF 29, Pets.' Repl. Mem. at 7-8.) Petitioners also state that Noteholder Respondents and Houlihan Respondents have not provided any evidence supporting the contention that complying with the subpoena would be burdensome, such as an estimated number of documents to be produced. (*See id.* at 9.) Petitioners further point out that the cost to Respondents would not be disproportional to the needs of the case given the nearly $1 billion at stake. (*See id.* at 9-10.)

Houlihan Respondents separately argue that compliance with the proposed subpoenas would be burdensome to them because they did not advise the ad hoc group on purchasing the Tender Notes. (*See* ECF 26, Houlihan's Mem. at 2-3.) Petitioners respond that Houlihan Respondents' "assertion that they lack relevant information does not withstand scrutiny" and points to public reports as well as Petitioners' own conversations with the Noteholders that confirm Houlihan Respondents' involvement with the ad hoc group. (*See* ECF 29, Pets.' Repl. Mem. at 8.) Petitioners further argue that if Houlihan Respondents truly did not advise the ad hoc group, "it will not be unduly burdensome for them to comply" with Petitioners' requests. (*See id.* at 8-9.)

> ii.  *Analysis*

Petitioners have met their burden of establishing that the discovery they seek is relevant and proportional to the needs of the case.

### A.  Arguments Relevant to All Respondents

Noteholder Respondents and Houlihan Respondents have not substantiated their claim that the discovery requested is not relevant to the English Action by pointing out that none of the Respondents is the current Trustee, GLAS.[3] Conversely, Petitioners have demonstrated that the requested discovery will be used to support their defense and potential counterclaim that GLAS acted in bad faith when it declared a default event. (*See* ECF 4, Pets.' Mem. at 4.)

Petitioners assert that Houlihan Respondents have presentations, emails, and written communications with the ad hoc group concerning of the advice they gave the ad hoc group; Petitioners state that this evidence "will show whether [GLAS]'s determination to notify an alleged Event of Default and certify it as materially prejudicial was compliant with its contractual duties, including the direction [GLAS] received from the ad hoc group and the purpose for that direction, the information [GLAS] considered, and [GLAS's] motivations for exercising discretion in the manner it did." (*Id.* at 5-6.) And Petitioners state that Noteholder Respondents have emails and other written communications with other members of the ad hoc group regarding "the conditions under which the [GLAS was named Trustee], including why

---

[3]    That Respondents are not the Trustee, and thus are not participants in the English Action, is a requirement for Petitioners to seek discovery from them under Section 1782, *see Intel Corp.,* 542 U.S. at 264, and therefore cannot, without more, be a reason why the Application should be denied.

GLAS was chosen in place of other, more qualified candidates; and why GLAS issued both the certificates of Material Prejudice and the Notice of Acceleration." (*Id.* at 6.) Petitioners assert that this evidence will reveal "any conditions place on or influence exerted on GLAS, and the intention of [Noteholder Respondents] and others in the ad hoc group in exerting that influence," which would then shed light on GLAS's "motivation for exercising discretion in the manner it did, and ultimately whether the Trustee's determination to notify an alleged Event of Default and certify it as materially prejudicial was compliant with its contractual duties." (*See id*. at 6-7.)

Additionally, as explained above, requiring Petitioners to await the English court's decision as to whether disclosure is appropriate in the English action would be akin to placing a quasi-exhaustion requirement on Petitioners' Application, which the Second Circuit has rejected. *See supra* Part II.B.2.c.

B.   Arguments Relevant to Noteholder Respondents

While the Noteholders' deal teams are located in England, current technology makes international communication reliable and convenient. Accordingly, educating a corporate representative on deposition topics would not be substantially more burdensome than if the deal teams were located in this District. *See In re Evenstar Master Fund SPC*, No. 20-MC-0418 (CS) (JCM), 2021 WL 3829991, at *14 (S.D.N.Y. Aug. 27, 2021) (granting the petitioner's Section 1782 application and explaining that designating and preparing a corporate designee for a deposition was not an undue burden); *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 2014) (explaining that an Israeli bank's compliance with a subpoena issued under Fed. R. Civ. P. 30(b)(6) was not an undue burden where "[a] person in New York can easily be educated by a

person in Israel by telephone, email or videoconference"). And to the extent preparing a witness for deposition does create a burden, there is no basis to conclude that the burden would be undue when compared to the potential benefit to Petitioners. *See Pishevar v. Fusion GPS*, 21-MC-0105 (ABJ) (MJS), 2025 WL 885115, at *5 (D.D.C. Mar. 21, 2025) (granting the petitioner's Section 1782 application and stating that, "[w]hile there is certainly some burden associated with preparing and producing any witness for deposition – and perhaps more so in the context of a corporate deponent . . . the Court does not believe it rises to the level of an undue burden . . . when weighed against the potential benefit to [the petitioner]").

Additionally, Noteholder Respondents have not met their burden of showing that complying with Petitioners' proposed discovery requests would be unduly burdensome, since they have proffered no evidence supporting the claimed burden. *See Children's Inv. Fund Found. (UK)*, 363 F. Supp. at 373 (granting the petitioner's Section 1782 application where the respondent failed to "specifically state why the requests are not narrowly tailored to the purposes of [the foreign] proceeding" or "demonstrate how each request is irrelevant or overbroad"); *In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. at 168  (granting the petitioner's Section 1782 application and finding that the respondents did not establish undue burden where they "point[ed] to no specific subpoenaed documents over which they lack[ed] control" and failed to "present particularized evidence . . . that production of [the requested] records would be unduly burdensome or costly").

Noteholder Respondents' conclusory statements that complying with Petitioners' document requests would be "likely to cost . . . several million dollars in attorney time and document review vendor costs" (*see* ECF 22, Vaswani Decl. ¶ 21; ECF 28, Noteholders' Mem. at

23

11) are insufficient to demonstrate that the proposed subpoenas are unduly burdensome. *See Vale* , 2021 WL 311236, at * 4 (denying the respondents' motion to quash the petitioner's documents requests and explaining that the respondent's conclusory statements that "complying with the subpoenas would involve the production of thousands of documents and inordinate numbers of hours" did not demonstrate that the subpoenas were unduly burdensome); *In re Chevron Corp.*, 749 F. Supp. 2d 135, 140 (S.D.N.Y. 2010) (denying the respondents' motions to quash the petitioner's document requests and finding that compliance with the document requests would not cause undue burden where "no serious effort has been made to quantify the amount of time or effort that would be required").

Even if Noteholder Respondents' claim of burden were supported, it would be difficult for them to demonstrate that the cost would be disproportionate to the needs of the case, given the nearly $1 billion at stake in the English Action. See *In re Mutabagani*, 22-MC-0299 (VB), 2023 WL 2811621, at *5 (S.D.N.Y. Apr. 6, 2023) (denying the respondent's motion to quash the petitioner's Section 1782 document requests where the respondent "[did] not demonstrate[] the burden [wa]s disproportionate to the needs of the case, given the amount in controversy and the importance of [the] discovery").

### C.  Arguments Relevant to Houlihan Respondents

Houlihan Respondents deny ever advising the ad hoc group on purchasing the Tender Notes. (*See* ECF 26, Houlihan Mem. at 2-3.) While typically, "a party's good faith averment that the items sought are not in its possession, custody, or control is sufficient to overcome a request for production," *In re Tecnologias Relacionadas Con Energia y Servicos Especializados, S.A. De C.V.*, No. 25-MC-435 (JPO), 2026 WL 972455, at *6 (S.D.N.Y. Apr. 10, 2026), here there is

evidence that Houlihan Respondents' statement is likely to be inaccurate. In support of the position that Houlihan Respondents possess the requested discovery, Petitioners have submitted with their Application a public report dated December 24, 2024, which states that Houlihan Lokey was working as a financial advisor to the ad hoc group to advise the group regarding whether the MQE Sale triggered a default under the terms of the Trust as well as other evidence of Houlihan Respondents' involvement. (*See* ECF 5, Thomas Decl. ¶¶ 21, 23; ECF 5-4, Dec. 24, 2025 Press Rep.; ECF 5-5, Feb. 4, 2025 Press Rep.) Petitioners also submitted correspondence with the ad hoc group's counsel in which counsel confirmed that it had communications with Mr. Dorst between December 17 and December 29, 2024. (*See* ECF 5-2, Milbank Letter.)

By contrast, Houlihan has not presented any evidence, other than the self-serving declaration of Mr. Dorst, rebutting Petitioners' documentary evidence of Houlihan's involvement with the ad hoc group. *See Children's Inv. Fund Found. (UK)*, 363 F. Supp. at 375 (denying the respondent's motion to quash the petitioner's 1782 subpoenas and finding that self-serving evidence "cannot form the basis of a Rule 26 objection"). Further, Petitioners seek documents dated August 1, 2024 and later and have stated that Houlihan Respondents advised the group only until sometime in December 2024; the burden in complying with Petitioners' discovery requests covering a five-month period is unlikely to be significant.

Accordingly, the fourth *Intel* Factor weighs in favor of granting the Application.

*** 

For the reasons set forth above, the four *Intel* Factors support granting the Application. To the extent that any Respondent finds that complying with the subpoenas cause undue

25

burden, whether because of the number of documents that need to be reviewed or for any other reason, Respondent may seek judicial intervention if necessary after meeting and conferring with Petitioners. *See In re Porsche Automobil Holding SE*, 15-MC-417 (LAK), 2016 WL 702327, at *10 (S.D.N.Y. Feb. 18, 2016) (granting the petitioner's Section 1782 application and noting that, upon "meet[ing] and confer[ring] in an effort to trim any remaining fat off [the] subpoena requests[,]" "the parties may seek judicial assistance in the event they reach any impasse").

## III.

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that Petitioners' application for an order to take discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782 be GRANTED, without prejudice to the right of any Respondent that finds, upon undertaking compliance with the subpoenas, that compliance presents an undue burden, to seek judicial assistance if necessary after meeting and conferring with Petitioners.


DATED:  May 12, 2026                              Respectfully Submitted,
            New York, NY


_____

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

26

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Koeltl.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).