UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF ANNINGTON FUNDING PLC, ANNINGTON LIMITED, ANNINGTON PROPERTY LIMITED, AND ANNINGTON HOMES LIMITED, PETITIONERS, FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY

26-mc-61 (JGK)

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The petitioners, Annington Funding plc, Annington Limited, Annington Property Limited, and Annington Homes Limited (collectively, "Annington"), brought this action pursuant to 28 U.S.C. § 1782 to compel various parties, including Houlihan Lokey, Inc. ("Houlihan") and Jeffrey Dorst (together, the "Houlihan Respondents"), and D.E. Shaw & Co., L.P., Sona Asset Management (US) LLC, and Centerbridge Partners, L.P. (together, the "Noteholder Respondents"), to produce records for use in a foreign proceeding in England (the "English Action"). See Pet'rs' Appl. Issuance Letters Rogatory 1, ECF No. 1. On May 12, 2026, Magistrate Judge Tarnofsky issued a Report and Recommendation recommending that this Court grant the petitioners' application for an order to take discovery for use in the English Action pursuant to 28 U.S.C. § 1782. See R. & R., ECF No. 31 ("R&R").

The respondents filed multiple objections to the Report and Recommendation on May 29, 2026, arguing that the Magistrate Judge erred in granting the application. See Obj. to R. & R. Noteholders Resp'ts ("Noteholders Obj."),

ECF No. 34; Obj. to R. & R. Houlihan Resp'ts ("Houlihan Obj."), ECF No. 35.[1] For the reasons discussed below, the respondents' objections are overruled, and the Court adopts Magistrate Judge Tarnofsky's Report and Recommendation.

## I.

The petitioners are investors in residential property in the United Kingdom. One of the petitioners, Annington Funding plc, has issued certain debt instruments (the "Notes") with a par value of £3.35 billion and varying maturity dates between 2025 and 2051. Decl. of David R. Thomas ("Thomas Decl.") ¶ 10, ECF No. 5. The Notes were issued through various trusts, each of which was managed by a trustee. Id. The trustee at the time the Notes were issued was BNY Mellon Corporate Trustee Services Limited ("BNY Mellon"). Id. ¶ 23.

From the time the Notes were issued until early 2025, the petitioners' largest asset was their interest in the Married Quarters Estate, which is a set of rental units for United Kingdom military personnel. Id. ¶ 8. In December 2024, the petitioners announced their intention to sell their interests in the Married Quarters Estate to the United Kingdom government for £5.994 billion. Id. ¶ 12. The sale was completed in January 2025. Id.

Around the time the petitioners announced the sale of the Married Quarters Estate, they made a tender offer under which noteholders could either sell

---

1 Although the original time for the respondents to object to the Report and Recommendation was May 26, 2026, the Court extended the time for the respondents to object until May 29, 2026. ECF No. 32.

their outstanding Notes to the petitioners at a premium or remain as bondholders of the petitioners while the petitioners used the Notes to make new investments in the UK private residential market (the "Tender Offer"). Id. ¶¶ 14–15.

After the petitioners announced the Tender Offer, some of the noteholders formed an ad hoc group to challenge the petitioners' prices for the Notes. Id. ¶ 18. This ad hoc group included the Noteholder Respondents. Id. ¶¶ 22, 24. The petitioners also allege that Houlihan, through Jeffrey Dorst, was briefly the financial advisor to the ad hoc group until it withdrew in December 2024 due to a conflict of interest. Id. ¶¶ 19–21.

Over the course of several months, the ad hoc group encouraged the then-trustee, BNY Mellon, to declare that the petitioners' sale of their interest in the Married Quarters Estate was a "cessation of business" that triggered a default under the trust deed. Id. ¶ 23. That declaration would have accelerated the Notes and required the petitioners to repay the noteholders at par. Id. BNY Mellon ultimately declined to declare that the Married Quarters Estate sale constituted a cessation of business, which led the ad hoc group to attempt to replace BNY Mellon as the trustee. Id. ¶¶ 25–49.

On January 20, 2026, the ad hoc group succeeded in replacing BNY Mellon as trustee with GLAS Trustees Limited ("GLAS"). Id. ¶ 50. On January 27, 2026, GLAS issued a Notice of Acceleration with respect to the Notes, declaring that the petitioners' sale of the Married Quarters Estate had constituted a "cessation of business." Id. ¶ 52.

Also on January 27, 2026, GLAS filed the English Action against Annington under Part 8 of the English Civil Procedure Rules before the High Court of Justice of England and Wales, King's Bench Division, Commercial Court. See id. ¶¶ 4, 54; see also Decl. of Mona Vaswani ("Vaswani Decl.") ¶ 7, ECF No. 22. GLAS seeks an order requiring, among other things, Annington to reopen the Notes immediately at par value together with certain monetary compensation, totaling approximately $1 billion at the current exchange rate. Thomas Decl. ¶¶ 5, 54. The respondents in this case are not parties to the English Action. Proceedings under Part 8 do not include a right of disclosure, during which parties conduct searches of their respective document repositories and disclose relevant documents to other parties—essentially the English equivalent of American discovery. See Vaswani Decl. ¶¶ 7–8. Evidence for the purposes of a Part 8 claim is instead generally submitted in the form of witness statements with documents attached as exhibits. See Decl. of Rebecca Louise Burton ("Burton Decl.") ¶¶ 18–20, ECF No. 30. Alternatively, parties to a proceeding in Part 8 can apply to transfer the case to Part 7, where disclosure is generally available. Id. ¶¶ 9–10, 14.

Annington filed an Acknowledgement of Service on March 20, 2026, objecting to the Part 8 procedure and requesting transfer to Part 7. See id. ¶¶ 5–6 & Ex. 6, at 3, ECF No. 30-6. Annington is now awaiting the English court's determination on the transfer. See id. ¶ 9.

The petitioners seek several categories of materials from the respondents in their § 1782 application, which the petitioners contend are relevant to their

defenses and potential counterclaims in the English Action. From Houlihan, the petitioners seek documents and communications between Houlihan and members of the ad hoc group concerning the advice Houlihan provided to the group, both about purchasing the Notes and the basis for challenging the tender price for the Notes. Decl. of George W. Kroup ("Kroup Decl.") Ex. 1, ECF No. 6-1. The petitioners also seek direct testimony and records from Mr. Dorst himself. Kroup Decl. Ex. 2, ECF No. 6-2. From the Noteholder Respondents, the petitioners seek documents and communications about, among other things, the Noteholder Respondents' knowledge and understanding of the Married Quarters Estate sale and Annington's business plans prior to undertaking their Note purchases; the removal of BNY Mellon as the trustee; the conditions under which GLAS was chosen as the replacement trustee; and why GLAS issued the Notices of Acceleration. Kroup Decl. Exs. 3–8.

## II.

"Although a magistrate may hear dispositive pretrial motions, [s]he may only submit proposed findings of fact and recommendations for disposition of the matter." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). A district judge reviews de novo a Magistrate Judge's Report and Recommendation, and must "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made." Nelson v. Smith, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985).[2]

---

2 Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

For "nondispositive pretrial matters, . . . the magistrate [judge] may issue orders." In re Hulley Enters. Ltd., 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019). "A district judge may only set aside or modify a portion of a Magistrate Judge's ruling on a non[]dispositive pretrial matter if [it] can be shown that the magistrate's order is clearly erroneous or contrary to law." Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., No. 21-mc-7, 2023 WL 2477889, at *1 (S.D.N.Y. Mar. 13, 2023) (Nigeria II). Rulings on pretrial matters, including discovery, "generally are considered nondispositive." Thomas E. Hoar, Inc., 900 F.2d at 525.

The proper standard of review to be applied to orders granting § 1782 applications is unsettled in this Circuit. In a recent unreported order, the Court of Appeals for the Second Circuit remanded a Magistrate Judge's order denying a § 1782 application to the district court to be "treated as a report and recommendation" for which "appropriate proceedings can be held." Associação dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp., No. 22-2865, 2023 WL 3166357, at *1 (2d Cir. Mar. 28, 2023) (summary order). However, the Court of Appeals's decision in that case was nonprecedential, and before that decision, "the majority of [district] courts [found] that rulings on § 1782 applications are not dispositive." In re Hulley Enters., 400 F. Supp. 3d at 71 (collecting cases). Moreover, while an "order denying discovery in a Section 1782 application" would be dispositive because denying a § 1782 application "dismiss[es] the . . . application" and "wholly dispose[s]" of it, Nigeria II, 2023 WL 2477889, at *1, an order granting a § 1782 application leaves

open the possibility that a district court may order further discovery and does not "necessarily dispose[] of the ultimate relief sought in the federal case," CPC Patent Techs. Pty Ltd. v. Apple, Inc., 34 F.4th 801, 808 (9th Cir. 2022). In this case, the Magistrate Judge's ruling would grant the application, and the appropriate standard of review to be applied to the order is unclear. To relieve this uncertainty, the Magistrate Judge issued a Report and Recommendation, taking the conservative view that a decision granting a § 1782 application may be dispositive. R&R at 2 n.1.

The Court will review the Report and Recommendation de novo, and for the reasons explained below, the objections fail even under the more rigorous de novo standard of review.

## III.

28 U.S.C. § 1782 "authorizes, but does not require," district courts to provide assistance to discovery applicants for use in foreign proceedings. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 255 (2004). Under § 1782, federal courts have wide discretion to determine whether to grant discovery and can tailor any requested discovery "to avoid attendant problems." Application of Esses, 101 F.3d 873, 876 (2d Cir. 1996). In considering discovery applications under § 1782, courts should consider the "twin aims" of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Id.

To obtain discovery under § 1782, the applicant must show the following requirements:

> (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or any interested person.

Id. at 875.

When these three requirements are satisfied, district courts consider the following factors in deciding whether to exercise their broad discretion:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

In re del Valle Ruiz, 939 F.3d 520, 533–34 (2d Cir. 2019) (quoting Intel, 542 U.S. at 264–65).

There is no dispute that the three statutory requirements for § 1782 are met. The respondents reside in or are found in this district; the discovery is sought for use in an English judicial proceeding; and the petitioners are interested persons in the foreign proceeding. The respondents instead focus their objections on Magistrate Judge Tarnofsky's application of the Intel factors.

**A.**

The Noteholder Respondents first argue that Magistrate Judge Tarnofsky misapplied the first Intel factor by looking only at whether the Noteholder Respondents were participants in the foreign proceeding. According to the Noteholder Respondents, the proper inquiry is instead whether the respondents are within "the jurisdictional reach of the foreign tribunal." Noteholders Obj. 8. The Noteholder Respondents argue that documents could be obtained from them in connection with the English Action and there is no basis therefore to attempt to get those documents through the use of a § 1782 proceeding.

This argument is unpersuasive. The Court of Appeals for the Second Circuit has not endorsed the Noteholder Respondents' articulation of the first Intel factor. On the contrary, the Court of Appeals has stated expressly that the first factor asks "whether the person from whom discovery is sought is a participant in the foreign proceeding." In re del Valle Ruiz, 939 F.3d at 533 (emphasis added); see also In re Top Matrix Holdings Ltd., No. 18-mc-465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("The Court is not asked to consider whether the requested evidence is located extraterritorially, but whether the person from whom discovery is sought is a participant in the foreign proceeding."). The Noteholder Respondents are not participants in the English Action.

To support their argument, the Noteholder Respondents cite a decision by the Court of Appeals for the Third Circuit in SPS Corp I, Fundo de Investimento em Direitos Creditórios Não Padronizados v. General Motors Co., 110

F.4th 586 (3d Cir. 2024). The Court need not decide whether the Third Circuit's formulation is consistent with del Valle Ruiz, because even accepting the Noteholder Respondents' framing, it is far from clear that the English court could compel the Noteholder Respondents to produce the relevant materials. The Noteholder Respondents claim that their "deal teams are primarily based in the United Kingdom." Noteholders Obj. 8. The relevant question, however, is not where they are located—it is whether the English court overseeing the English Action has the power to compel the Noteholder Respondents to produce discoverable materials. Because the English Action is proceeding under Part 8 of the English Civil Procedure Rules, there is no right of disclosure, and the Noteholder Respondents never explain how Annington could obtain the materials they seek under § 1782 in the English Action. Annington has moved to transfer the English Action to Part 7, where disclosure is generally available. But even then, the Noteholder Respondents are nonparties to the English Action, and Part 7 disclosure generally runs against parties. The first Intel factor therefore favors granting the application.

**B.**

The Noteholder Respondents next argue that the Magistrate Judge erred in applying the second Intel factor because the English court would not be receptive to receiving § 1782 discovery. According to the Noteholder Respondents, "the P[ar]t 8 procedure is designed for the determination of relevant claims without elaborate pleadings" and claims brought pursuant to the

Part 8 procedure "will normally be heard and disposed of on written evidence." Noteholders Obj. 6 (quoting Vaswani Decl. Ex. 2, at 1, ECF No. 22-2). Allowing Annington to obtain discovery would allegedly frustrate this goal. See id.

This argument is unpersuasive because it does not follow from the fact that claims brought under the Part 8 procedure ordinarily will rest on limited evidence that the English court would not consider materials obtained through a § 1782 petition. The Noteholder Respondents must point to "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added). Instead, they point to two sources: a declaration from their own English solicitor characterizing Part 8 procedures, and the English White Book, which is a reference guide for civil litigation in England and Wales. The former is not the kind of authoritative proof, such as "judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures," that would tend to show that the English court would reject discoverable materials. Id. The latter says nothing about whether an English court overseeing a Part 8 proceeding would reject § 1782 evidence. Indeed, nothing in the record suggests that the English court, or any other branch of the UK government, has expressed any view about whether it would reject evidence obtained through § 1782. As the Noteholder Respondents explain, Part 8 proceedings allow the parties to submit witness statements

along with accompanying exhibits, which could be obtained during a § 1782 proceeding. Broader disclosures are permissible in a Part 7 proceeding, which Annington seeks to invoke in the English Action. But there is no requirement that discovery must await a ruling on the motion to transfer to Part 7, particularly given the time it will take to obtain the discovery sought in the § 1782 proceeding.

The Noteholder Respondents also argue that until the English court in the English Action determines whether a substantial dispute of fact exists, "there is no basis for this Court to proceed on the assumption that Petitioners will prevail in convincing the English court to expand the scope of relevant inquiry in the English Action." Noteholders Obj. 7. But this argument inverts the burden of proof in a § 1782 action. It is the Noteholder Respondents who bear the burden of offering authoritative proof that the English court would not be receptive to § 1782 discovery; it is not Annington that must prove the English court would be receptive to such discovery. The second Intel factor therefore favors granting the application.

## C.

The third Intel factor asks whether the request for discovery is an attempt to circumvent foreign proof-gathering restrictions. Proof-gathering restrictions are "best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to

facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., 27 F.4th 136, 153 (2d Cir. 2022) (Nigeria I). A party is engaged in circumvention, for example, when avoiding "measures that are intended to restrict certain means of gathering or using evidence," id., or when the party has "already exhausted available remedies in foreign tribunals" and is using the application to gain a second "bite at the apple," In re Top Matrix, 2020 WL 248716, at *6.

The Noteholder Respondents argue that the petitioners seek to "circumvent the policies of Part 8" by requesting discovery through § 1782. Noteholders Obj. 4. They again emphasize that "Part 8 proceedings are streamlined proceedings for matters that do not involve substantial disputes of fact," and that the English Action was assigned to the Financial List, "which provides for swift and efficient adjudication of certain financial matters." Id. at 3.

This argument misapprehends the third Intel factor. The relevant question is not whether the foreign tribunal's own discovery procedures would allow a party to obtain the materials sought under § 1782. Indeed, "the Supreme Court rejected the so-called foreign-discoverability rule and held that § 1782(a) does not categorically bar a district court from ordering production of documents when the foreign tribunal or the interested person would not be able to obtain the documents if they were located in the foreign jurisdiction." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 81 (2d Cir. 2012). Instead, the question is whether the foreign tribunal's rules "prohibit the

acquisition or use of" the materials sought under § 1782. Nigeria I, 27 F.4th at 153. Part 8 does not do so. Although Part 8 procedures are intended for matters that do not involve substantial disputes of fact, Part 8 does not prohibit parties from acquiring or using evidence. As the White Book observes, parties in Part 8 proceedings can submit "[e]vidence . . . in the form of a witness statement, subject to the court's power to admit oral evidence where it is necessary to resolve issues of fact." Vaswani Decl. Ex. 2, at 9; see also Burton Decl. ¶¶ 18–20. Limiting evidence to witness-statement exhibits is not the same as prohibiting "the acquisition or use of" evidence. Nigeria I, 27 F.4th at 153. The Noteholder Respondents have therefore failed to show that English law would prohibit Annington from using discovery materials sought in this action as exhibits in a Part 8 proceeding.[3]

The Noteholder Respondents also acknowledge that Annington has requested that the action be transferred to Part 7, where discovery would be more freely available. They argue, however, that this Court must wait for the English court to make its determination on the transfer to Part 7 before granting Annington's application. Noteholders Obj. 4–5. Granting relief at an earlier date, the Noteholder Respondents contend, would allow the petitioners to

---

3 The Noteholder Respondents cite Kiobel v. Cravath, Swaine & Moore LLP to support their claim that this discovery application is an attempt to "bypass [the foreign jurisdiction's] discovery restrictions and gain access to documents [plaintiff] could not otherwise acquire." 895 F.3d 238, 245 n.3 (2d Cir. 2018). But Kiobel is distinguishable. According to the Court of Appeals for the Second Circuit, its decision in Kiobel relied in part on the existence of a confidentiality order, which is not present in this case. In re SBK ART LLC, 168 F.4th 68, 80, 82 (2d Cir. 2026).

"leapfrog" the English court's determination. Id. at 4. This argument fails because "the district court should not condition discovery on an overt expression from the foreign court that it wants or needs the information." Mees v. Buiter, 793 F.3d 291, 303–04 (2d Cir. 2015).

Accordingly, the third Intel factor weighs in favor of granting the application.

**D.**

A request is "unduly intrusive or burdensome" under the fourth Intel factor if it exceeds the standards of Rule 26 of the Federal Rules of Civil Procedure. Mees, 793 F.3d at 302. Magistrate Judge Tarnofsky concluded that the "Petitioners have met their burden of establishing that the discovery they seek is relevant and proportional to the needs of the case," specifically to "support their defense and potential counterclaim that GLAS acted in bad faith when it declared a default event." R&R at 21. Magistrate Judge Tarnofsky also held that Annington's requests are not unduly burdensome, despite the Noteholder Respondents' asserted compliance costs and the Houlihan Respondents' contention that their representatives were minimally involved in the underlying dispute. Id. at 23–24.

The Noteholder Respondents contend that Magistrate Judge Tarnofsky "ignore[d]" the burden they will bear in complying with Annington's discovery requests. Noteholders Obj. 10. Magistrate Judge Tarnofsky did not ignore any evidence. She correctly observed that the Noteholder Respondents' evidence of

burden was conclusory. The Noteholder Respondents "failed to set forth an estimate of the volume of documents requested, the location of the documents, . . . the form of the documents," or any "estimate of the time required to comply with the request." Watkins v. Ellesse LLC, No. 24-mc-23, 2024 WL 4582755, at *7 (S.D.N.Y. Oct. 25, 2024). Moreover, there is no showing that the possible costs of discovery are disproportionate to the needs of the English Action. The most the Noteholder Respondents point to is the assertion of their solicitor that she "believe[s] the cost to [the] Noteholder Respondents would be several million dollars." Vaswani Decl. ¶ 20. But Ms. Vaswani never explains how she calculated that figure. "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." In re Vale S.A., No. 20-mc-199, 2021 WL 311236, at *3 (S.D.N.Y. Jan. 29, 2021).

The Noteholder Respondents also argue that the materials Annington seeks are minimally relevant because "there are no substantial disputes of fact in the English Action, and [the] Petitioners have yet to convince the English court otherwise." Noteholders Obj. 10. But the materials Annington seeks are plainly relevant to the question whether the Noteholder Respondents and the Houlihan Respondents were aware of Annington's strategic plans around the time of the Tender Offer. The answer to that question bears on the petitioners' defense and potential counterclaim in the English Action that GLAS acted in bad faith when it declared a default event. Annington is not required to receive

permission from the English court before seeking materials under § 1782 that are facially relevant to the dispute.

Finally, the Houlihan Respondents argue that the § 1782 application should be denied because there is no evidence that Houlihan in fact offered any assistance to the ad hoc group. Houlihan Obj. 6, 8. This argument is unpersuasive because the record shows that there was some communication with the ad hoc group about the Notes. The petitioners provide a declaration supporting the claim that Houlihan was a financial advisor to the ad hoc group; they also point to a news article reporting that Houlihan briefly worked with the ad hoc group. Thomas Decl. ¶¶ 21–22 & Ex. D, ECF No. 5-4. The petitioners also submit correspondence with the noteholders' counsel, in which counsel confirmed that it "had limited communications with Jeffrey Dorst at Houlihan Lokey between 17 and 19 December 2024." Thomas Decl. Ex. B, ECF No. 5-2. Although the Houlihan Respondents submit a declaration by Mr. Dorst stating that the Houlihan Respondents never advised the ad hoc group, Decl. of Jeffrey Dorst ("Dorst Decl.") ¶ 6, ECF No. 27, the requests are facially relevant given the acknowledged December 2024 communications. See In re Application of 000 Promneftstroy, 134 F. Supp. 3d 789, 790, 793–94 (S.D.N.Y. 2015) (crediting emails showing that deponent had "unique and direct personal knowledge" over his "claim[] that he possesse[d] no discoverable information"). Indeed, Mr. Dorst acknowledges that he had a brief period of communication with the ad hoc group before determining there was a conflict. Dorst Decl. ¶ 5.

For these reasons, the fourth Intel factor weighs in favor of granting the application.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. The objections to the Report and Recommendation of the Magistrate Judge are **overruled** and the Court **adopts** the Magistrate Judge's Report and Recommendation in its entirety. The petitioners' § 1782 application is **granted**.

The Noteholder Respondents' motion for leave to file a reply in support of their objections is **denied as moot**. The Clerk is therefore respectfully instructed to close ECF No. 37.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 24, 2026**

**John G. Koeltl**
**United States District Judge**